**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DOMINIC L. VERSER,**

**Petitioner,**

**v.**                                                     **CASE NO. 25-3081-JWL**

**THOMAS L. WILLIAMS,**

**Respondent.**

**MEMORANDUM AND ORDER**

This matter is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Dominic L. Verser, a state prisoner incarcerated at Ellsworth Correctional Facility in Norton, Kansas. It comes now before the Court on Respondent's pre-answer response ("PAR") (Doc. 6) regarding exhaustion, procedural default, and anticipatory procedural default of the grounds for relief asserted in this matter. The time granted to Petitioner to respond to the PAR has expired without the Court receiving a response from Petitioner. For the reasons explained below, the Court will dismiss Grounds Four and Five because consideration of their merits is barred by anticipatory procedural default. The Court will order Respondent to file an answer to the remaining asserted grounds for relief.

**Background**

In July 2011, a jury in Wyandotte County, Kansas convicted Petitioner of first-degree murder and criminal possession of a firearm. (Doc. 1, p. 1.) Two months later, he was sentenced to life in prison without the possibility of parole for 25 years for the murder conviction and 12 months in prison for the criminal possession of a firearm, to be served consecutively. *Id.* at 1; *see also State v. Verser*, 299 Kan. 776, 783 (2014) (*Verser I*). Petitioner pursued a direct appeal, but

1

in June 2014, the Kansas Supreme Court ("KSC") affirmed his convictions and sentences. (Doc. 1, p. 2); *Verser I*, 299 Kan. at 791. Petitioner then unsuccessfully pursued state habeas relief under K.S.A. 60-1507. (Doc. 1, p. 3); *Verser v. State*, 2024 WL 1337472 (Kan. Ct. App. Mar. 29, 2024) (unpublished) (*Verser II*), *rev. denied* Mar. 27, 2025.

On April 30, 2025, Petitioner filed his petition for federal habeas relief under 28 U.S.C. § 2254 and began this action. (Doc. 1.) He asserts seven grounds for relief and asks this Court to vacate his convictions and sentences and to order a new trial. *Id.* at 8-29, 33. The Court began the review of the petition required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and determined that a limited PAR was appropriate. Thus, on May 15, 2025, the Court ordered Respondent to file a PAR addressing the affirmative defenses of failure to exhaust, procedural default, and anticipatory default. (Doc. 3.)

Respondent filed his PAR on September 15, 2025, arguing that this Court should dismiss Grounds Four, Five, and Six of the petition because they are procedurally defaulted and no avenue exists by which Petitioner could return to state court to exhaust them. (Doc. 6, p. 3-15.) Petitioner was granted to and including October 15, 2025 in which to file a reply to the PAR if he chose to do so. (Doc. 5.) As of the date of this order, the Court has not received a reply from Petitioner.

## Rule 4 Standards of Review

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to review a habeas petition upon filing and to dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Because Petitioner is proceeding pro se, the Court liberally construes the pleading, but it may not act as Petitioner's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing

arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). It "'may not rewrite a petition to include claims that were never presented.'" *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (citation omitted).

## Exhaustion Requirement

"'A threshold question that must be addressed in every habeas case is that of exhaustion.'" *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quoting *Harris v. Champion*, 15 F.3d 1538, 1544 (10th Cir. 1994). A state prisoner must exhaust all available state-court remedies before pursuing federal habeas relief unless it appears there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1); *see also Bland v. Simmons*, 459 F.3d 999, 1011 (10th Cir. 2006). To satisfy the exhaustion requirement, Petitioner must have presented the very issues raised in the federal petition to the either the KCOA or the KSC, which must have denied relief. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); Kansas Supreme Court Rule 8.03B(a). Petitioner bears the burden to show he has exhausted available state remedies. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992); *see also Parkhurst v. Pacheco*, 809 Fed. Appx. 556, 557 (10th Cir. 2020).

The exhaustion requirement exists to "give state courts a fair opportunity to act on [a petitioner's] claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). The Tenth Circuit recently explained:

> For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be fairly presented to the state courts . . . . Thus, we recognize that we must afford state courts the opportunity to pass upon and correct alleged violations of its prisoners' federal rights, which those courts cannot do unless they have been alerted to the fact that the prisoners are asserting claims under the United States Constitution. A petitioner need not cite book and verse on the federal constitution. But he must do more than present[ ] all the facts necessary to support the federal claim to the state court or articulat[e] a somewhat similar state-law claim. At bottom, the crucial inquiry is whether *the substance* of the petitioner's claim has been presented to the state courts in a manner sufficient

to put the courts on notice of the federal constitutional claim.

*Honie v. Powell*, 58 F.4th 1173, 1184 (10th Cir. 2023) (citations and internal quotation marks omitted). In other words, to properly exhaust a claim, Petitioner must have presented to a state appellate court the same constitutional claim on which he now seeks federal habeas relief.

When a federal habeas petition is a mixed petition, meaning that it contains exhausted and unexhausted claims and state-court remedies are still available for the unexhausted claims, the federal court generally should dismiss the matter "without prejudice so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891-92 (10th Cir. 2018) (internal citations and quotation marks omitted). In the alternative, the court may stay the petition and hold it in abeyance while the petitioner exhausts state-court remedies, deny the petition on the merits, or allow the petitioner to delete the unexhausted claims and proceed only on the exhausted claims. *See Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016). But where a petitioner has failed to present a claim in the state appellate courts and would be procedurally barred from presenting it if he returned to state court, there is an anticipatory procedural bar that prevents the federal court from addressing the merits of the claim. *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007). The claim is referred to as being barred by anticipatory procedural default.

There are two ways in which a federal habeas petitioner may overcome the bar on consideration of the merits of his unexhausted claims that are procedurally defaulted or barred by anticipatory procedural default: (1) he can establish cause and prejudice for his default of state court remedies or (2) he can establish that a fundamental miscarriage of justice will occur if the Court does not consider the merits of the claims. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).

To demonstrate cause in this context, a petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule and exhaust the claim in question. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner.]" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). He also must show "actual prejudice as a result of the alleged violation of federal law." *See Coleman*, 501 U.S. at 750.

An anticipatory procedural default also may be excused if Petitioner can show that the failure to consider the claim would result in a fundamental miscarriage of justice. To proceed under this exception, Petitioner "must make a colorable showing of factual innocence." *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). "Actual innocence means 'factual innocence not mere legal insufficiency.'" *O'Bryant v. Oklahoma*, 568 Fed. Appx. 632, 637 (10th Cir. 2014) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Petitioner is not required to conclusively exonerate himself, but he must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The Tenth Circuit has made clear:

> [T]enable actual-innocence gateway pleas are rare, arising only in an extraordinary case. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.

*Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted).

To qualify for this exception, or pass through the actual innocence gateway so that a federal court can consider the merits of habeas claims barred by anticipatory procedural default, a

petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021). If the petitioner comes forward with new reliable evidence, "[t]he habeas court must make its determination . . . 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Schlup*, 513 U.S. at 328.

## Discussion

To his credit, Respondent concedes in the PAR that Grounds One, Two, Three, and Seven in this matter are properly exhausted. (Doc. 6, p. 3, 12.) The Court also has reviewed Grounds One, Two, Three, and Seven as required by Rule 4 and finds that they are not subject to dismissal at this time. Thus, the Court focuses on the remaining three asserted grounds for relief: Grounds Four, Five, and Six.

### *Ground Four*

In Ground Four of the petition, Petitioner argues that he received unconstitutionally ineffective assistance of counsel when his trial counsel declined the trial court's offer to grant a mistrial. (Doc. 1, p. 21.) For context, Petitioner's convictions stemmed from "the March 2009 shooting death of Olivia Anaekwe, the mother of his child." *Verser I*, 299 Kan. at 777. At the time of Ms. Anaekwe's death, she and Petitioner lived separately; Petitioner lived with his mother in one unit of a duplex that shared a driveway with the other unit in the duplex. *Id.*

On the night of Ms. Anaekwe's death, Petitioner's sister saw Ms. Anaekwe, Petitioner, and their baby sitting in the backseat of Ms. Anaekwe's car, which was parked in the duplex's

driveway. *Id.* at 778. Between 10:00 and 10:30 p.m. a neighbor heard a commotion outside that

ended with a loud thud or boom. *Id.* At 10:41 p.m., Petitioner's mother called 911 from the duplex

and reported hearing gunshots. *Id.* at 777-78. When firefighters responded to the 911 call, they

found Ms. Anaekwe in the car; she was dead as the result of a gunshot wound to her head. *Id.*

       The most controversial testimony at Verser's trial came from Michael Cox, another neighbor. The State became aware of Cox only a few weeks before trial, after Anaekwe's mother found him. Cox met with detectives for the first time a week before trial began. Then, at trial, during his direct examination, Cox testified that he heard "firecrackers" at approximately 10:50 p.m. on the night of Anaekwe's murder. The noise prompted Cox to look outside, where he saw a car sitting in the street with its driver's side door open. A man that Cox was "45%" sure was Verser was standing next to the car. Cox said that he observed a gun in the man's hand and that he saw the man take a baby out of the backseat. Cox testified that the man then ran away from the car and up the street.

       Defense counsel's cross-examination of Cox entirely neutralized Cox's value to the State's case. Cox had testified on direct that he arrived home about 10:35 p.m., but he was forced to admit on cross that he had not left work until 11:10 p.m. and did not arrive home until approximately 11:50 p.m.—well after the murder. Defense counsel also asked Cox about a statement he had given to detectives about seeing the victim "hunched over to the right in the car." Cox admitted he had not actually seen any such thing. Cox also had told investigators and had testified on direct that he left his house after the murder, which explained why he was not around to provide a statement during the initial investigation. The cross-examination then concluded with the following exchange:

       "Q. Are you sure you remember what you're testifying that you remember or do you think you remember what you're testifying?

       "A. I think.

       "Q. So you're not sure you witnessed what you're saying you witnessed, are you?

       "A. No, sir. So I have problems remembering stuff.

       "Q. So everything that you've been testifying to, you're not sure if that's the truth or not, are you?

       "A. No, sir."

       Things did not improve for the State during Cox's redirect examination:

"Q. So, Mr. Cox, you're saying everything you just said didn't happen, is that true?

"A. Yes.

. . . .

"Q. Okay. So you lied just now the whole time?

"A. Sorry.

. . . .

"Q. . . . Well, do you remember this or not?

"A. No.

. . . .

"Q. Did you ever remember this then?

"A. No.

"Q. Then why did you come forward and say you did?

"A. I don't know."

The State moved to strike Cox's testimony from the record. During a bench conference on the State's motion, defense counsel sought a mistrial. Before the State had an opportunity to respond fully, the district judge ordered a short recess so that defense counsel could discuss the situation with Verser.

When the proceedings resumed, defense counsel withdrew his motion for mistrial. The State then sought a mistrial, and the district judge ordered another recess.

On return to the courtroom, the district judge said that he was inclined to grant a mistrial if Verser wanted one. The district judge also advised Verser that he could not challenge the judge's failure to grant a mistrial on appeal, if he refused to be given one. Verser and his counsel had a brief discussion, and then counsel informed the court that Verser wanted to proceed with the trial. The judge denied the State's motion for mistrial.

*Verser I*, 299 Kan. at 780-82.

In his direct appeal, Petitioner argued that the trial judge erred by failing to declare a mistrial, an argument the KSC rejected, finding that any error was invited by Petitioner. *Id.* at 784-85. The record now before this Court further reflects that Petitioner argued in his K.S.A. 60-1507 motion that his trial counsel provided ineffective assistance of counsel by failing to pursue a mistrial after Mr. Cox's testimony. (*See* Doc. 7-7, p. 1, 3-4.) But there is no indication that Petitioner ever argued to the Kansas *appellate courts* that his trial counsel was unconstitutionally ineffective for failing to pursue or obtain the finding of mistrial. (*See* Doc. 7-4, p. 1-54 (Petitioner's brief to the KCOA in the 60-1507 appeal)); *see also Verser II*, 2024 WL 1337472. Thus, this argument, which is Ground Four in this federal habeas matter, was not properly exhausted in the state courts. And as Respondent argues in the PAR, it does not appear that there is any avenue by which Petitioner could return to the state courts to do so.

As noted above, it is Petitioner's burden to show exhaustion. But Petitioner has failed to reply to the PAR, in which Respondent argues that Ground Four is barred by anticipatory procedural default and also argues that Petitioner has not shown any reason not to enforce that bar. Thus, the Court finds that Petitioner has not shown that Ground Four may be considered on its merits. The Court will dismiss Ground Four because consideration of the merits is barred by anticipatory procedural default.

### Ground Five

In Ground Five of the petition, Petitioner asserts that he received unconstitutionally ineffective assistance of counsel when his trial counsel encouraged the trial court to answer a question from the deliberating jury outside of Petitioner's presence. (Doc. 1, p. 23.) Counsel for the State, counsel for Petitioner, and Petitioner himself were present when the trial court read the jury's question into the record and proposed an answer. *Id.* Everyone agreed on the answer to be

given, but the State questioned whether the answer should be read to the jury in open court. *Id.* Petitioner's trial counsel stated that he had never followed that procedure and that he was fine with the answer being sent to the jury in the deliberation room. *Id.* Petitioner points out that trial counsel did not ask him whether he wished to waive his constitutional right to be present at every critical stage of the proceedings. *Id.*

In Petitioner's direct appeal, the KSC addressed a related argument—that by sending the answer to the deliberation room rather than reading it aloud to the jury in open court, the trial court violated his right to be present at every critical stage of the proceedings. *Verser I*, 299 Kan. at 787. The KSC held "that it was both statutory and constitutional error to fail to read the answer to the jury's question in open court with [Petitioner] present." *Id.* at 789 (citation omitted). After further analysis, however, the KSC found that the error—the violation of Petitioner's right to be present at every critical stage of the proceedings—was harmless. *Id.* at 789-90.

The record now before this Court reflects that Petitioner then argued to the state district court in his K.S.A. 60-1507 motion that trial counsel was ineffective for allowing the violation of his right to be present at every critical stage. (*See* Doc. 7-7, p. 2, 4-6.) But the brief filed by Petitioner in the appeal from the denial of K.S.A. 60-1507 relief does not raise the same issue. (*See* Doc. 7-4, p. 1, 7.) The brief only mentions the violation of Petitioner's right to be present at every critical stage in his argument that the cumulative effect of trial and appeal counsel's multiple errors denied him a fair trial "even if some of the claims, standing alone, would not establish the requisite prejudice" for a reversal based on ineffective assistance of counsel *Id.* at 53.

At no point did Petitioner argue to the Kansas *appellate* courts that his trial counsel's failure to protect his right to be present at every critical stage of the proceedings was sufficiently prejudicial, by itself, to be unconstitutionally ineffective assistance of counsel. This is the

argument he makes now to this Court in Ground Five of his federal habeas petition. (Doc. 1, p. 21.) Thus, the Court finds that Ground Five of the petition was not exhausted. And, as Respondent argues in the PAR, it does not appear that there is any avenue by which Petitioner could return to state court to do so. By failing to reply to the PAR, Petitioner has failed to show that Ground Five may be considered on its merits. The Court will dismiss Ground Five because consideration of the merits is barred by anticipatory procedural default.

**Ground Six**

Respondent initially argues in the PAR that this Court cannot consider the merits of Ground Six because it was not properly exhausted and is now barred by anticipatory procedural default. (Doc. 6, p. 2.) Yet in the portion of the PAR dedicated to Ground Six, instead of addressing exhaustion or anticipatory procedural default, Respondent argues only that Ground Six is based on an alleged violation of state law and, as such, cannot lead to federal habeas relief. *Id.* at 10-12. The May 2025 M&O stated:

> [T]he Court directs Respondent to file a PAR limited to addressing the affirmative defenses of failure to exhaust, procedural default, and anticipatory procedural default. . . .
>
> *The PAR should not address the merits of the asserted grounds for relief.* If this case proceeds past the Rule 4 review, Respondent will at that time be ordered to submit a fully developed answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Respondent may, in that answer, argue the merits of the asserted grounds for relief. At this point in time, the Court is focused on determining whether a failure to exhaust, procedural default, or anticipatory procedural default bars this Court's consideration of the merits of any of the claims asserted in the petition.

(Doc. 3, p. 2 (emphasis added).)

In light of this language, Respondent's argument regarding the merits of Ground Six goes beyond the limited scope of the PAR ordered by the Court. The Court has, however, resumed the Rule 4 review of this matter, during which it independently considers each ground asserted by

Petitioner and determines whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" on that ground. Therefore, as part of the Rule 4 review, the Court has considered whether Ground Six—in addition to the other grounds asserted in the petition—could potentially lead to federal habeas relief.

In Ground Six of the petition, Petitioner argues that the state courts[1] erred in rejecting his argument that the trial court denied him a fair trial by allowing evidence of a prior crime without first conducting the analysis required by K.S.A. 60-455. (Doc. 1, p. 26.) Respondent argues in the PAR that Ground Six alleges only the violation of state law, which cannot form the basis for federal habeas relief. (Doc. 6, p. 10-12.) The Court disagrees. Petitioner asserts in Ground Six that the KSC's holding that the admission of the evidence did not require reversal "allow[ed] the trial court[] to violate my statutory *and constitutional right*, denying me a fair trial." (Doc. 1, p. 26 (emphasis added and all errors in original).) By this language, Ground Six asserts the violation of Petitioner's constitutional right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution.

Moreover, contrary to Respondent's unsupported assertion in the PAR, Petitioner exhausted this constitutional argument in the state courts. The brief Petitioner filed in his direct appeal argued that the admission of the evidence at issue in what is now Ground Six "violated [his] fundamental constitutional rights to a fair trial and to be presumed innocent under the Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 7-1, p. 33.) It is true that the KSC did not treat the evidentiary issue as one raising constitutional arguments and, instead, it

---

[1] Petitioner asserts in the petition that the KCOA erred in ruling on this issue, but he also alleges that this issue was raised on direct appeal. (Doc. 1, p. 26.) The KCOA did not issue an opinion in Petitioner's direct appeal, but the KSC's opinion in the direct appeal addressed Petitioner's argument "that the district judge committed reversible error when he admitted evidence of the incident between [Petitioner] and Anaekwe that occurred approximately 3 weeks before her murder." *Verser I*, 299 Kan. at 785. The opinion's discussion of this issue was prefaced by the heading "K.S.A. 2013 Supp. 60-455 evidence." *Id.* In light of this information, the Court liberally construes Ground Six to challenge the KSC's holding on the evidentiary issue raised in the direct appeal.

applied "the nonconstitutional harmlessness standard of K.S.A. 2013 Supp. 60-261." *Verser I*, 299 Kan. at 786. Its decision to do so, however, does not transform Petitioner's argument to the KSC into one that alleged only the violation of state law, nor does it prevent Petitioner from raising that same constitutional argument in this federal habeas action. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that when a state supreme court denies relief but does not provide reasons for doing so, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale"). Contrary to Respondent's argument in the PAR, the Court concludes that Ground Six was fairly presented to the KSC in Petitioner's direct appeal. Ground Six is properly exhausted and it states a constitutional claim that is cognizable in this federal habeas action. Thus, it survives the Rule 4 review of the petition in this matter.

## Conclusion

The Court has completed reviewing the petition as required by Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts. The Court finds that:

1. Petitioner is presently a prisoner in the custody of the State of Kansas; and

2. Petitioner demands his release from such custody, and as grounds therefore alleges that he is being deprived of his liberty in violation of his rights under the Constitution of the United States, and he claims that he has exhausted all remedies afforded by the courts of the State of Kansas with respect to the arguments made in his petition.

**IT IS THEREFORE ORDERED**

1. That Grounds Four and Five are **dismissed with prejudice** because consideration of the merits of the claims therein is barred by anticipatory procedural default and Petitioner has not made the showing required for the Court to consider the merits of a defaulted claim.

2. That pursuant to Rule 5 of the Rules Governing Section 2254 Cases, Respondent shall file an answer on or before **November 26, 2025** showing why the writ should not be granted based on the arguments in Grounds One, Two, Three, Six, and Seven of the petition (Doc. 1) and attachments thereto.

3. That the answer should address:

   a. The necessity for an evidentiary hearing on Grounds One, Two, Three, Six, and Seven as alleged in the petition;

   b. Whether the arguments in Grounds One, Two, Three, Six, or Seven of the petition are barred by a statute of limitations or any other procedural bar; and

   c. An analysis of Grounds One, Two, Three, Six, and Seven and any cases and supporting documents relied upon by Respondent in opposition to the same.

Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings complained of by Petitioner. If a direct appeal of the judgment and sentence of the trial court was taken by Petitioner, Respondent shall furnish the records, or copies thereof, of the appeal proceedings and any subsequent postconviction proceedings.

4. That upon the termination of the proceedings herein, the clerk of this Court will return to the clerk of the proper state court all state court records and transcripts.

5. That Petitioner be granted to and including **December 30, 2025** to file a traverse, or response, to the answer, admitting or denying, under oath, all factual allegations therein contained.

6. That the clerk of this Court then return this file to the undersigned for such other and further proceedings as may be appropriate; and that the clerk of this Court

transmit copies of this order to Petitioner and to the office of the Attorney General

for the State of Kansas.


**IT IS SO ORDERED.**

DATED:   This 21st day of October, 2025, at Kansas City, Kansas.


<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge