**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DOMINIC L. VERSER,**

**Petitioner,**

**v.**

**THOMAS L. WILLIAMS,**

**Respondent.**

**Case No. 5:25-cv-03081-HLT**

**MEMORANDUM AND ORDER**

Petitioner Dominic Verser is a state prisoner incarcerated in Kansas on criminal sentences for first-degree murder and criminal possession of a firearm. He brings this pro se petition for writ of habeas corpus under 28 U.S.C. § 2254. [1] Doc. 1. Five grounds (grounds 1-3 and 6-7) remain after screening.[2] Respondent urges the Court to dismiss them. The Court agrees that there is no basis for relief and denies the § 2254 petition with prejudice.

## I. BACKGROUND

In July 2011, a jury in Wyandotte County, Kansas convicted Verser of first-degree murder and criminal possession of a firearm in the death of Olivia Anaekwe on March 26, 2009. The Kansas Supreme Court (KSC) summarized the underlying facts and evidence leading to his convictions when it resolved his direct appeal. *State of Kansas v. Verser*, 326 P.3d 1046 (Kan. 2014) (*Verser I*). In short form, Verser and Anaekwe began dating in late 2007 or early 2008 and shared a child, who was born in February 2009. On March 26, 2009, firefighters responding to a

---

1 Because Verser is pro se, the Court construes liberally his pleadings and holds them to a less stringent standard than pleadings drafted by lawyers, but the Court does not assume the role of advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

2 This case was previously assigned to Judge Lungstrum. He reassigned the case after dismissing ground 4 and 5 with prejudice as barred by anticipatory procedural default.

911 call found Anaekwe's car stopped in the street with its driver's door open and Anaekwe's body lying partly in the street and partly in the car. It was apparent that Anaekwe was dead based on the lack of a detectible pulse and the nature of the injuries. An autopsy revealed she had suffered a "perforating gunshot wound" to the right side of the top of her head. And forensic analysis showed Anaekwe had been shot from the direction of the backseat and that the firearm was inside the car when fired.

The firearm used in the murder was never recovered, but the casing showed that the gun fired a .223 cartridge. A search of Verser's residence produced a live .223 REM cartridge in a dresser and a manual for a Kel-Tec PLR-16 pistol, which fires a .223 round. A firearms expert was able to conclude from the casing that the murder weapon was likely to have been a Kel-Tec PLR-16 or a Kel-Tec SU-16 rifle.

At trial, Verser's mother testified that she made a 911 call reporting the sound of gunfire. She testified that she made the call after Verser told her that Anaekwe had been shot. Verser's brother also testified that Verser admitted to shooting Anaekwe shortly after it occurred. Other trial testimony included that Verser was seen with blood on his face after Anaekwe's shooting. There was also testimony that Verser's mother gave Verser's cousin a heavy object wrapped in a white t-shirt that "felt like a firearm" after she called 911, which the cousin then hid.

The jury convicted Verser, and the sentencing court sentenced him to life in prison without the possibility of parole for 25 years on the first-degree murder conviction and a consecutive term of 12 months in prison for the criminal possession of a firearm conviction. Verser appealed his convictions, but the KSC affirmed his convictions in *Verser I*. The KSC held:

- any error in failing to declare a mistrial after an officer, while testifying, commented on Verser's exercise of his Fifth Amendment rights was not a "structural" one and had been invited by Verser;

- any error in admitting prior bad act evidence without analyzing it under K.S.A. 60-455 was harmless because the evidence against Verser was "overwhelming" and there was "no reasonable probability the error affected the trial's outcome in light of the entire record";
- the substitution of the word "any" for the word "each" in the oral instruction to the jury on the reasonable doubt standard was not erroneous and a de minimis deviation from the written instruction; and
- error in failing to answer jury question in open court and in Verser's presence was harmless.

Verser then filed a petition under K.S.A. 60-1507 in state court seeking habeas relief. He asserted ten grounds for relief based on ineffective assistance. The district court denied relief. *See* Doc. 1-1 at 1-24 (including district court order). Verser appealed to the Kansas Court of Appeals (KCOA) and raised three of the ten grounds on appeal. The KCOA:

- rejected Verser's argument that counsel was constitutionally ineffective for failing to preserve a challenge to the *Leon*'s good-faith exception to the Fourth Amendment because counsel had preserved the issue and because Verser had not shown prejudice related to this issue;
- rejected Verser's argument that counsel was constitutionally ineffective for failing to object to the officer's errant comment, while testifying, on Verser's invocation of his right to remain silent because Verser had not shown prejudice related to this issue; and
- rejected Verser's argument that these two alleged instances of ineffective assistance of counsel combined with the errors found in his direct appeal would have likely led to reversal because "the evidence against Verser was overwhelming" and he therefore had not shown prejudice.

*Verser v. State of Kansas*, 2024 WL 1337472 (Kan. Ct. App. 2024) (*Verser II*).

The KSC declined to review *Verser II*. Verser then filed the present petition. Five grounds for relief remain after screening. The Court addresses each below.

## II. LEGAL STANDARD

State prisoners incarcerated for violations of state law can seek release from confinement from federal courts through a writ of habeas corpus under 28 U.S.C. § 2254 if their convictions violated their federal rights. The Antiterrorism and Effective Death Penalty Act (AEDPA) governs

applications for federal habeas relief and requires a petitioner to first exhaust any state-law remedies before pursuing relief in federal court. The Supreme Court recently explained the standard to be applied once a claim is exhausted:

> A federal court may grant habeas relief as to a claim adjudicated on the merits in state court only if the state court relied on an unreasonable determination of the facts or unreasonably applied clearly established Federal law, as determined by [the Supreme Court]. To show that a state court unreasonably applied clearly established federal law, a petitioner must show that the court unreasonably applied the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. An unreasonable application, in turn, is one with which no fair[-]minded jurist would agree.

*Andrew v. White*, 604 U.S. 86, 92 (2025) (internal quotation and citations omitted).

## III. ANALYSIS

Verser asserts five grounds for relief. The Court analyzes each ground and finds each is without merit.

### A. Failure to Preserve Argument for Appellate Review

Verser first argues that counsel violated his Sixth Amendment right to effective assistance of counsel by failing to preserve a Fourth Amendment challenge for appellate review. The Sixth Amendment guarantees a criminal defendant the right to counsel's assistance in his or her defense. U.S. Const. amend. VI. The right to counsel includes the right to counsel's effective assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A petitioner prevails on a Sixth Amendment ineffective-assistance challenge by showing (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that the outcome would have been different but for counsel's unreasonable errors. *Id.* at 687-88, 691-92, 694. Verser's first ground is based on a false premise and lacks merit.

This argument concerns a motion to suppress that trial counsel filed before trial. The trial court denied the motion. Trial counsel did not make a contemporaneous objection at trial when the

corresponding evidence was introduced (i.e., the bullet and firearm manual found during the search of Verser's residence). Appellate counsel did not pursue the suppression issue on direct appeal. And state habeas counsel argued that trial counsel was constitutionally ineffective for not preserving the issue at trial.

The KCOA rejected this argument on Verser's habeas appeal. Applying *Strickland*, the KCOA found that Verser had shown neither deficient performance nor prejudice. *Verser II*, 2024 WL 1337472 at *6-8. The KCOA reasoned that Verser's trial counsel had not failed to preserve the suppression argument for appeal as a matter of Kansas state law. *Id.* It also found that his Fourth Amendment suppression argument had been sufficiently raised and the failure of a contemporaneous objection to the evidence in-question did not waive the argument for purposes of appellate review. *Id.* Verser therefore could not satisfy *Strickland*'s requirements. *See id.*

This Court agrees. Verser has not shown that the KCOA's decision is contrary to clearly established federal Sixth Amendment jurisprudence. The Court is also bound by the KCOA's conclusion that Verser's Fourth Amendment suppression argument was adequately preserved under state law. Given the failure of the foundational premise of Verser's habeas argument, it's simply not possible for the Court to see how the KCOA's decision could reflect an unreasonable application of clearly established Sixth Amendment law. This ground (Ground 1) lacks merit.

**B. Failure to Object to Witness's Improper Commentary**

Verser next argues that counsel violated his Sixth Amendment right to effective assistance of counsel by failing to object to a witness's improper commentary of Verser's invocation of his Fifth Amendment right to silence. *Strickland*'s two-step approach also applies to this ground. This ground also lacks merit.

At trial, a detective commented on Verser's invocation of his Fifth Amendment right to remain silent and his refusal to speak to her as part of the investigation of Anaekwe's murder. The

KCOA rightly observed that the prosecutor had not elicited this testimony from the witness, did not pursue the comment further, and did not use the comment in arguing the case. Verser's trial counsel stated in a side-bar conversation that he had elected not to pursue the stray comment to avoid drawing attention to it.

The KCOA concluded that Verser could not show prejudice even if trial counsel's failure to object was deficient. *Verser II*, 2024 WL 1337472 at *8-9. The KCOA observed:

> The prosecutor did not solicit the testimony. The prosecutor did not emphasize it. The State made no further mention of Verser's assertion of his right to remain silent. The evidence against Verser was overwhelming. This was not a credibility contest between Verser and the victim. Neither testified. The defense was that "the State hasn't shown what happened beyond a reasonable doubt." There is no reasonable probability that the isolated reference to Verser's postarrest silence affected the outcome of this case.

*Id.* at *8.

This Court's job on a § 2254 motion is to ascertain whether the KCOA's decision relied on an unreasonable determination of the facts or amounted to an unreasonable application of the facts to clearly established federal law as determined by the U.S. Supreme Court. The Court finds that the KCOA's decision was neither of these. The KCOA found that Verser's Sixth Amendment right to effective assistance of counsel was not violated because Verser had not shown prejudice. Its conclusion is consistent with the factors federal courts use to determine the prejudicial effect of improper commentary on a criminal defendant's invocation of his Fifth Amendment right to silence. *E.g.*, *United States v. Remigio*, 767 F.2d 730, 735 (10th Cir. 1985).[3] And Verser has not

---

[3] *Remigio* lists the following factors used to determine whether comments about a defendant's post-Fifth Amendment-invocation of silence are harmful: (1) "the use to which the prosecution puts the . . . silence," (2) the party who pursued the line of questioning eliciting the comment, (3) "the quantum of other evidence indicative of guilt," (4) "the intensity and frequency of the reference," and (5) the trial judge's "opportunity to grant a motion for mistrial or give curative instructions." 767 F.2d at 735 (quotation and citation omitted).

argued (much less shown) that the law governing assessment of these factors is contrary to clear and binding Supreme Court authority. This ground (Ground 2) lacks merit.

### C. Admission of Prior Bad Act Testimony

Verser's third argument is that the trial court improperly admitted prior bad act testimony against him. The evidence concerned a domestic incident between Verser and Anaekwe that occurred a few weeks before Anaekwe's murder. Verser contends that the trial court failed to analyze the evidence under K.S.A. 60-455, which prohibits the admission of evidence of prior bad acts to prove propensity. Verser contends this failure resulted in evidence being improperly admitted and the admission of this evidence deprived him of his federal rights to a fair trial and to due process.

Verser raised the statutory argument that the trial court's admission of the evidence in-question violated K.S.A. 60-455 on direct appeal. He also raised the constitutional argument. But the KSC addressed only Verser's statutory argument. Not his constitutional one. The KSC assumed (without analysis) the trial court erred and violated K.S.A. 60-455 by admitting the prior bad act evidence but determined any error that may have been made was harmless.

The Court addresses the federal constitutional dimension of Verser's argument and rejects it. "Federal habeas review is not available to correct state law evidentiary errors[.]" *Whitten v. Williams*, 2023 WL 116474, at *3 (10th Cir. 2023) (internal quotation omitted). The improper introduction of evidence at trial does not always (or even usually) create a constitutional problem. Federal habeas relief is available for state-law errors in admitting evidence "only if [the] alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Id.* This makes sense. A contrary rule would have the tendency to create mountains out of molehills.

But Verser does not endeavor to show how the circumstances of this case clear this remarkably high bar. In particular, Verser fails to indicate how the simple failure to analyze the prior bad-act evidence in-question under K.S.A. 60-455 was so "grossly prejudicial" that it "fatally infected the trial" and rendered it fundamentally unfair.

Like K.S.A. 60-455's federal relative, Federal Rule of Evidence 404 outlines permissible reasons for admitting evidence of prior bad acts. And Verser does not argue that one of those reasons does not apply to the prior bad act evidence in question. He merely argues that the failure to analyze the evidence under the rule before admitting it was improper and from there concludes that his right to a fair trial and due process must have been denied. This stops well-short of demonstrating any prejudice, let alone the sort of extreme prejudice that deprives a criminal defendant of due process. This ground (Ground 6) lacks merit.

**D. Reasonable Doubt Instruction**

Verser's penultimate argument is that he was denied due process and the right to a fair trial because the trial court's oral instruction to the jury on reasonable doubt substituted "any" for the word "each." Specifically, the trial court's oral instruction included: "[I]f you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty." *Verser I*, 326 P.3d at 1054. The written instructions the jury received used the word "each" instead of "any." *Id*.

"Under the due process clause, the prosecution bears the burden of proving all elements of the offense charged" beyond a reasonable doubt. *Coleman v. Estep*, 391 F. App'x 697, 699 (10th Cir. 2010) (internal quotation omitted) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993)). But the Constitution merely requires that the "court instruct[ ] the jury on the necessity that [the accused]'s guilt be proved beyond a reasonable doubt," not that "any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511

U.S. 1, 5 (1994). The instruction needs to "correctly convey the concept of reasonable doubt to the jury." *Id.* (internal quotation and citation omitted).

The trial court's use of the word "any" in the oral instruction on reasonable doubt did not mischaracterize the State's burden of proof and did not violate the Constitution. A natural reading of the phrasing the trial court used indicates that the State needed to prove the elements of the crimes beyond a reasonable doubt. And the written instructions that were delivered clarified that it was each element of each offense that needed to be proved beyond a reasonable doubt. Understood in context, there was nothing constitutionally deficient about the reasonable doubt instruction the jury received. *Cf. Coleman*, 391 F. App'x at 699 (finding that the instruction "if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty" was not improper). This ground (Ground 7) lacks merit.

**E. Cumulative Error**

Verser's final argument is that the cumulative effect of constitutional errors at trial denied him due process and a right to a fair trial. The KCOA addressed a similar argument in Verser's habeas appeal in connection with his ineffective assistance of counsel claim stemming from counsel's failure to object to the detective's testimony about his invocation of Fifth Amendment rights. The additional aggregated errors the KCOA considered were (1) the trial court's failure to answer a jury question in open court and in the presence of Verser and (2) the trial court's admission of prior bad act evidence under K.S.A. 60-455. *Verser II*, 2024 WL 1337472 at *8-9.

"In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019) (internal quotation omitted). A state appellate court's prior decision addressing and rejecting a cumulative error claim that involves the same

errors raised in the federal habeas petition is accorded deference. *Id.* at 917-18. If there is a difference between the cumulative errors claimed in the federal habeas court, then a de novo review is conducted. *See Hamilton v. Mullin*, 436 F.3d 1181, 1196-97 (10th Cir. 2006). "To receive habeas relief" on a cumulative error claim a petitioner, "must show that the cumulative effect of the errors determined to be harmless had a substantial and injurious effect or influence in determining the jury's verdict." *Cuesta-Rodriguez*, 916 F.3d at 915 (internal quotation and citation omitted).

The KCOA analyzed the cumulative effect of errors that are in play here. The KCOA considered the aggregate prejudicial effects of the mention of Verser's silence to investigators alongside the trial judge's failure to answer the jury question in open court and the admission of prior bad act testimony. Those are the same alleged errors that are subject to the cumulative error analysis here.[4] And the KCOA concluded that it was not convinced that there was reasonable doubt that the "result[ ] of the trial would have been different" given the "overwhelming" evidence of Verser's guilt. *Verser II*, 2024 WL 1337472 at *9. The Court finds nothing in this conclusion that is at odds with binding and clearly established federal authority. As the KCOA emphasized in its order, the evidence of Verser's guilt was otherwise overwhelming. The Court therefore concludes that the cumulative effect of these errors did not have a substantial and injurious effect or influence in determining the jury's verdict. This ground (Ground 3) lacks merit.

**F. Certificate of Appealability**

Verser does not request a certificate of appealability. And the Court does not issue one. But even if he had made such a request, his petition does not demonstrate entitlement to one. A

---

[4] The Court does not cumulate "[m]eritless claims or claims that are not prejudicial or claims that are procedurally barred . . . ." *Cuesta-Rodriguez*, 916 F.3d at 916 (internal quotation and citation omitted). Verser's ineffective assistance claim relating to his attorney's alleged failure to preserve a suppression issue for appeal is not part of the analysis because there was in fact no failure to preserve the issue. The same goes for the reasonable doubt claim. The instruction was not constitutionally deficient and thus is not part of the cumulative error analysis. Even if included, the outcome is the same.

certificate of appealability is appropriate only where an issue raised in a habeas petition is "debatable among reasonable jurists" or "deserve[s] encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). The grounds raised in Verser's petition satisfy neither condition. A certificate of appealability would not be appropriate even if one had been requested.

## IV. CONCLUSION

For the above reasons, the Court denies the petition under § 2254 with prejudice. The Court does not issue a certificate of appealability.

THE COURT THEREFORE ORDERS that the Verser's writ of habeas corpus (Doc. 1) is DENIED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: August 25, 2026

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE